1
2
3
4               **UNITED STATES DISTRICT COURT**
5                  **DISTRICT OF NEVADA**
6                        * * *

| | |
|---|---|
| 7   TARZ MITCHELL, | Case No. 2:12-cv-02082-RFB-CWH |
| 8         Plaintiff, | **<u>ORDER</u>** |
| 9    v. | Defendants' Motion to Dismiss (ECF No. 17) |
| 10   GREG COX, *et al.*, | Defendants' Motion for Summary Judgment (ECF No. 39) |
| 11         Defendants. | Defendants' Motion to Strike Surreply (ECF No. 46) |
| 12 | |

13

14 **I.**     **INTRODUCTION**

15       This case is before the Court on a Motion to Dismiss (ECF No. 17) and a Motion for

16 Summary Judgment (ECF No. 39), both of which were filed by Defendants, officials employed

17 by the Southern Desert Correctional Center (SDCC) and/or the Nevada Department of

18 Corrections (NDOC). Plaintiff Tarz Mitchell claims that he suffered multiple violations of his

19 constitutional rights while incarcerated at SDCC. In his complaint, Plaintiff alleges that

20 Defendants violated his right to free exercise of religion and retaliated against him for filing

21 grievances and civil lawsuits seeking to vindicate that right. Plaintiff also alleges that Defendants

22 discriminated against him because of his race and religion. Finally, Plaintiff claims that he was

23 subjected to excessive force by correctional officers at SDCC. Defendants filed a Motion to

24 Dismiss and a Motion for Summary Judgment, each of which makes several arguments as to why

25 Plaintiff's case should not proceed. Defendants also filed a Motion to Strike a surreply filed by

26 Plaintiff in response to the Motion for Summary Judgment (ECF No. 46). For the reasons stated

27 below, the Motion to Dismiss is granted in part and denied in part. The Motion for Summary

28 Judgment is denied. The Motion to Strike Plaintiff's surreply is granted.

## II.    BACKGROUND

The following background is taken from Plaintiff's complaint. ECF No. 4. Plaintiff Tarz Mitchell, who is currently incarcerated at High Desert State Prison, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Id. at 1-7. Plaintiff is African American and Jewish, and also identifies as a Hebrew Israelite. Id. at 8-9. Plaintiff alleges that he filed multiple grievances and civil complaints against SDCC officials because he was not receiving kosher meals, or at least satisfactory kosher meals, and was being prevented from worshiping on the Sabbath (Saturday). Id. Plaintiff alleges that as a result of his assertion of his rights and the concomitant grievances he filed, Defendants waged an "aggressive retaliatory campaign" against him between January and August of 2011 with the intent to intimidate and harass Plaintiff and to suppress the exercise of his religious beliefs. Id. at 1, 7-8. These actions were:

- Filing a Notice of Charges against Plaintiff for abuse of the grievance process;
- Implementing a policy requiring all Jewish inmates, and only Jewish inmates, to report to the culinary unit for all meals or receive a Notice of Charges;
- Targeting, or encouraging other officers to target, Plaintiff and other Jewish inmates who received kosher diets and filing Notices of Charges against them to punish them for filing grievances;
- Cutting the calories Plaintiff received at mealtimes, feeding him the same meals every day, and feeding him roach-contaminated food;
- Changing worship schedules so that Plaintiff and other Hebrew Israelites were not able to worship on Saturdays;
- Claiming that Hebrew Israelites are not recognized by the NDOC; and
- Refusing to allow Plaintiff to observe Passover because he is black and Jewish, whereas at least one white Jewish inmate was allowed to observe it.

Id. at 8-9.

Plaintiff also alleges that on February 12, 2012, Defendants Brown, Guerro, and Espinoza—all of whom were employed as correctional officers by SDCC at the time—used racial epithets and exerted excessive force against Plaintiff. Id. at 9-10. Plaintiff alleges that these

officers "dragged him out of the culinary, then slammed him against the wall, kicked [his] legs from up under him, forced their knees in his back, having him in a spider man position against the culinary wall in an impossible spread eagle stance [and] encouraging the gun tower to shoot Plaintiff if he slightly moved from the position." Id. at 9. Plaintiff also states that these officers did these things to Plaintiff to show other inmates "what happens to black [inmates] who want to participate in religious practice and receive a kosher meal." Id. at 9-10. Plaintiff states that the officers called him an "impostor Jew" and told him he could not go to the medical unit. Id. at 10. Plaintiff suffered injuries to his back that continue to cause pain. Id.

Plaintiff's complaint was filed with the Court on March 12, 2013. The complaint alleges in general that based upon the actions outlined above, officials at Southern Desert Correctional Center violated Mitchell's First Amendment and Fourteenth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

Specifically, Plaintiff alleges six counts in his complaint. On March 12, 2013, the Court screened the complaint and allowed the following claims to proceed:

- **Count I:** First Amendment retaliation claim against Greg Cox, Cheryl Burson, and Brian Williams. Plaintiff alleges that these defendants filed notices of charges against him after he filed grievances about being harassed and discriminated against because he is black and practices Judaism.

- **Count II:** First Amendment free exercise and retaliation, Fourteenth Amendment equal protection, and RLUIPA claims against Defendants Williams, Burson, Cox, Foster and Oswald Reyes. Plaintiff alleges that these defendants cut his calories to less than the state- and federal-recommended 1200 daily calories and fed him roach-infested food so that he would forego kosher meals.

- **Count III:** First Amendment free exercise, Fourteenth Amendment equal protection, and RLUIPA claims against Defendants Williams, Burson and Frank Dreesen. Plaintiff alleges that these defendants denied him the opportunity to practice his Jewish faith and to observe the Jewish holidays.

- **Count IV:** First Amendment free exercise and retaliation, Fourteenth Amendment

- 3 -

equal protection, and RLUIPA claims against Jimmy Jones, Dean Willet, and Nathan Courtney. Plaintiff alleges that these defendants filed numerous Notices of Charges (NOCs) against him in retaliation for his filing of grievances regarding the lack of calories and roach-infested food.

- **Count V:** First Amendment free exercise and retaliation, RLUIPA, and Fourteenth Amendment equal protection claims against Williams, Burson, Foster, Johnny Youngblood, and Julio Calderon. Plaintiff alleges that these Defendants refused to allow him to worship on the Sabbath and cancelled services in retaliation for his filing of grievances.  He also alleges that these Defendants allowed white Jewish inmates to observe Passover and Muslims to observe Ramadan but did not allow him to observe religious holidays or attend Sabbath services.

- **Count VI:** First Amendment retaliation, Eighth Amendment excessive force, and Fourteenth Amendment discrimination claims against defendants Brown, Guerro and Espinoza for the alleged force described above. Plaintiff alleges these defendants used excessive force to retaliate against him because he is black and practices Judaism and submitted grievances seeking kosher meals.

Defendants filed a Motion to Dismiss on October 3, 2013, ECF No. 17, and a Motion for Summary Judgment on February 13, 2014, ECF No. 39. Plaintiff filed a surreply to the Motion for Summary Judgment, and Defendants filed a Motion to Strike the surreply. ECF Nos. 45, 46. The Court held oral argument on the Motion to Dismiss and Motion for Summary Judgment on January 29, 2015. Minutes of Proceedings, ECF No. 63.

### III.   LEGAL STANDARD

#### A.  Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted

1   as true and are construed in the light most favorable to the non-moving party." <u>Faulkner v. ADT</u>

2   <u>Sec. Servs., Inc.</u>, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

3           To survive a motion to dismiss, a complaint need not contain "detailed factual

4   allegations," but merely asserting "'labels and conclusions' or 'a formulaic recitation of the

5   elements of a cause of action'" is not sufficient. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

6   (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). In other words, a claim will

7   not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief

8   that is plausible on its face," meaning that the court can reasonably infer "that the defendant is

9   liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citation and internal quotation marks

10  omitted). In sum, at the motion to dismiss stage, "[t]he issue is not whether a plaintiff will

11  ultimately prevail but whether [he] is entitled to *offer* evidence to support the claims." <u>Cervantes</u>

12  <u>v. City of San Diego</u>, 5 F.3d 1273, 1274-75 (9th Cir. 1993) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S.

13  232, 236 (1974)) (emphasis in original).

14          "As a general rule, a district court may not consider any material beyond the pleadings in

15  ruling on a Rule 12(b)(6) motion." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001)

16  (citation and internal quotation marks omitted). If the district court relies on materials outside the

17  pleadings submitted by either party to the motion to dismiss, the motion must be treated as a

18  Rule 56 motion for summary judgment. <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996).

19  Two exceptions to this rule exist. First, the court may consider extrinsic material "properly

20  submitted as part of the complaint," meaning documents either attached to the complaint or upon

21  which the plaintiff's complaint necessarily relies and for which authenticity is not in question.

22  <u>Lee</u>, 250 F.3d at 688 (citation omitted). Second, the court "may take judicial notice of matters of

23  public record." <u>Id.</u> (citation and internal quotation marks omitted).

24

25          **B.  Motion for Summary Judgment**

26          Summary judgment is appropriate when the pleadings, depositions, answers to

27  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

28  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

## IV.    DISCUSSION

### A.  Defendants' Motion to Dismiss

Defendants make three arguments in their motion to dismiss. First, they argue that Plaintiff's discrimination and retaliation claims are barred by a previous settlement. Second, Defendants contend that Plaintiff did not exhaust his administrative remedies with respect to Count II. Third, Defendants argue that Plaintiff cannot sue state officials in their official capacities for damages in an action brought pursuant to 42 U.S.C. § 1983. Each argument is addressed below.

At the outset, however, the Court notes that Plaintiff stated in his response brief that Count II was mistakenly included in his complaint and should be dismissed. Resp. Mot. Dismiss at 2, ECF No. 26. Plaintiff confirmed this at the motion hearing. Accordingly, Count II is dismissed with prejudice.

#### 1.  The Previous Settlement

Defendants argue that the religious and racial discrimination claims in the complaint, which arose in 2011, are precluded by a settlement relating to a prior case brought by Plaintiff in 2009. See Mot. Dismiss at 4, 7-11, Ex. B, ECF No. 17. The Court will consider the settlement agreement and prior complaint in connection with the Motion to Dismiss. These documents are properly incorporated by reference because despite the fact that their contents are not alleged in the instant complaint, Plaintiff's claim depends on them, they are attached to the motion to

1    dismiss, and the parties do not dispute their authenticity. Knievel v. ESPN, 393 F.3d 1068, 1076

2    (9th Cir. 2005).

3         The prior complaint was filed in Mitchell v. Skolnik, no. 2:09-cv-02377-KJD-PAL (the

4    "2009 Action"). See Mot. Dismiss Ex. B. The prior complaint alleges that Plaintiff's civil rights

5    were violated in 2009 by officials employed by the Nevada State Prison (NSP) and SDCC. Id. at

6    1-5. On December, 15, 2011, Plaintiff and the defendants in the 2009 Action entered into a

7    settlement agreement (the "Prior Settlement") through which they agreed to "release and forever

8    discharge" the defendants, as well as the State of Nevada and its officers and employees, from

9    "any and all claims, actions, causes of action, suits, proceedings, demands, damages, costs,

10   expenses and fees, whether known or unknown, arising out of and relating to the alleged

11   violations of Plaintiff's civil rights which serve as the basis for this litigation." Mot. Dismiss Ex.

12   B ("Prior Settlement") at 3-4. The settlement also stated that the parties would not commence

13   any other action "on account of any matter or claims arising out of the facts and claims as

14   hereinbefore set forth." Id. at 5.

15        In their motion to dismiss, Defendants argue that the Prior Settlement bars Plaintiff's

16   claims in this case as asserted in Counts II, III, and V of the current complaint. Defendants'

17   argument, which was further developed at the motion hearing, is essentially that these claims

18   "arise out of" or are "related to" the civil rights claims that Plaintiff agreed to release in the

19   settlement. Defendants rely on the fact that the Prior Settlement was signed by both parties in

20   December of 2011—after the alleged violations which serve as the basis for Counts II, III and V

21   of the instant complaint. In addition, Defendants point out that Plaintiff made references to

22   ongoing litigation in grievances filed in 2011 which serve as the partial basis for the instant

23   litigation. These references, Defendants argue, demonstrate that Plaintiff was aware that the

24   settlement agreement would encompass the claims presented in Counts II, III, and V.

25        In most cases, "the construction and enforcement of settlement agreements are governed

26   by principles of local law which apply to interpretation of contracts generally," even when the

27   action involves federal claims. Jones v. McDaniel, 717 F.3d 1062, 1067 (9th Cir. 2013) (citations

28   and quotation marks omitted). Under Nevada law, if a release is unambiguous the court must

1  construe it from the contractual language. In re Amerco Derivative Litig., 252 P.3d 681, 693

2  (Nev. 2011). Ordinarily, release terms do not apply to future causes of action unless the contract

3  expressly says so. In re Amerco, 252 P.3d at 698. The ultimate goal is to effectuate the parties'

4  intent, but when the intent is not clearly expressed in the contractual language, a court may also

5  consider the surrounding circumstances of the agreement. Id. "A contract is ambiguous when it is

6  subject to more than one reasonable interpretation. Any ambiguity, moreover, should be

7  construed against the drafter." Anvui, LLC v. G.L. Dragon, LLC, 163 P.3d 405, 407 (Nev.

8  2007).

9       The Court finds that the Prior Settlement does not bar the claims in the current lawsuit for

10  several reasons. First, the settlement agreement is unambiguous in what it encompasses: a release

11  of the claims alleged in the 2009 Action as well as any potential claims Plaintiff *could have*

12  brought that arose out of the allegations in the 2009 Action. The agreement contains no statement

13  that would indicate that both parties intended that Plaintiff would release later-arising claims

14  based on further alleged violations, nor does it include language clearly indicating that the parties

15  intended that the agreement would preclude litigation based on grievances Plaintiff filed in 2011.

16       Second, to the extent that the agreement contains any ambiguity, the Court can find no

17  indication or extrinsic evidence supporting the assertion that both parties understood the

18  agreement to release Plaintiff's 2011 claims. On the contrary, Plaintiff stated in his brief and at

19  oral argument that he was litigating multiple actions against NDOC officials during the time

20  period between commencing the Mitchell v. Skolnik action and the signing of the Prior

21  Settlement, and has been successful in at least some of his claims. Defendants have not

22  attempted to refute these statements. This evidence suggests that it is unlikely that Plaintiff

23  understood the settlement agreement to release anything more than those claims he brought

24  against NDOC officials in the 2009 Action and those that he could have brought at that time. The

25  evidence of multiple lawsuits also weakens Defendants' argument that Plaintiff, by referencing

26  the fact that he was fighting NDOC in court in grievances he filed in 2011 relating to his current

27  claims, demonstrated that he understood the settlement to foreclose those later-arising claims.

28  The mentions of ongoing litigation in his grievances may have referred to any of Plaintiff's suits

1   against NDOC officials, and the Court has not been presented with any evidence of the

2   resolution of those actions.

3          Third, a review of the facts of both complaints indicates that the 2009 Action was based

4   in significant part upon violations that occurred at a different facility (NSP) than the current

5   complaint (SDCC). Counts II and III of the complaint filed in the 2009 Action are specifically

6   directed at actions taken by officials at NSP that allegedly denied Plaintiff the right to observe

7   his religion. This fact constitutes further evidence that Plaintiff did not anticipate that the Prior

8   Settlement would encompass claims arising in 2011 at SDCC. The only other claim in the 2009

9   Action that might relate to the current action is Count IV, which alleges that specific officials at

10  SDCC retaliated against Plaintiff because he filed grievances seeking to receive kosher meals.

11  However, considering the evidence of surrounding circumstances discussed above, the Court

12  cannot conclude that the agreement bars Plaintiff's current claims, particularly in light of the

13  principle that ambiguities in contracts be construed against the drafter (in this case, the State of

14  Nevada and its employees). See Anvui, LLC, 163 P.3d at 407.

15         Finally, the Court is mindful of the principle in Nevada contract law that contractual

16  release terms ordinarily "do not apply to future causes of action unless expressly contracted for

17  by the parties." In re Amerco, 252 P.3d at 693 (citation omitted) (internal quotation marks

18  omitted). Defendants rely on the term in the settlement agreement whereby Plaintiff released all

19  claims "arising out of and relating to the alleged violations . . . which serve as the basis for [the

20  2009] Litigation" and argue that the claims alleged in the current action "arise out of" or "relate

21  to" the claims alleged in the 2009 Action. Mot. Dismiss at 8-9; Reply in Supp. Mot. Dismiss at 3.

22  If the Court were to adopt Defendants' argument and hold that the Prior Settlement released *all*

23  claims "arising out of" or "relating to" the 2009 allegations, this would necessarily include even

24  those related claims arising beyond the date the parties signed the agreement. In other words,

25  Defendants' interpretation limits the scope of the settlement agreement only by whether later-

26  arising claims are "related" to the claims asserted in the 2009 Action, not by whether those later-

27  arising claims accrue before or after the Prior Settlement was signed. At oral argument, however,

28  Defendants rejected such a broad interpretation of the Prior Settlement—a position with which

the Court agrees, given that there is no express language in the agreement releasing future causes of action. Since it is clear (and both parties agree) that the Prior Settlement was not intended to bar all future "related" claims, the Court fails to see why it should then be interpreted to preclude only those "related" claims that existed at the time of signing. Either the release of claims "arising out of and relating to the alleged violations . . . which serve as the basis for this Litigation" refers to all related claims arising in the future, or it does not. It is clear from the foregoing that it does not, and the Court will not construe the term to do so. Therefore, the Court limits the scope of the Prior Settlement to the parties' intent as demonstrated by the evidence: a release of the claims asserted in the 2009 Action as well as those related claims which could have also been brought in that action. The Prior Settlement does not bar the current action.

### 2.  Exhaustion of Administrative Remedies

Defendants' next ground for dismissal is that Plaintiff failed to exhaust administrative remedies as to Counts II, III, and V. Count II has already been dismissed for the reasons discussed above. Defendants' exhaustion argument with respect to Counts III and V is denied at the motion to dismiss stage in light of Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc).

In Albino, the Ninth Circuit held that the affirmative defense of failure to exhaust administrative remedies in a 42 U.S.C. § 1983 case is more appropriately raised in a motion for summary judgment as opposed to an unenumerated Rule 12(b) motion, as Defendants did here. Id. at 1170. In rare cases where failure to exhaust is apparent on the face of the complaint, the non-exhaustion defense can be raised via a Rule 12(b)(6) motion to dismiss. Id. at 1169. However, this is not one of those cases. "[A] plaintiff is not required to say anything about exhaustion in his complaint," id., and it does not appear on the face of the instant complaint that Plaintiff failed to exhaust. Defendants' exhaustion argument is therefore rejected at the motion to dismiss stage.

### 3.  Official Capacity Claims

Finally, Defendants argue that all of Plaintiff's official-capacity claims against Defendants should be dismissed. The Court dismisses claims for monetary damages asserted against Defendants in their official capacities. Plaintiff's claims for injunctive relief survive.

State officials sued in their official capacities are not "persons" for the purposes of Section 1983 and thus are entitled to immunity under the Eleventh Amendment. <u>Flint v. Dennison</u>, 488 F.3d 816, 825 (9th Cir. 2007). However, an exception to the bar against suing state officials under Section 1983 exists when the officials are sued for prospective injunctive relief. <u>Id.</u> Thus, the Eleventh Amendment does not bar relief designed "to prevent an ongoing violation of federal law." <u>Doe v. Lawrence Livermore Nat'l Laboratory</u>, 131 F.3d 836, 840 (9th Cir. 1997).

The Court finds that Plaintiff's claims seeking monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment and are therefore dismissed. However, Plaintiff also seeks injunctive relief in his official-capacity claims. Plaintiff's complaint specifically requests the revision of NDOC Administrative Regulation 810 ("AR 810") and the adoption of new procedures by Defendants Sandoval, Cortez Masto and Miller "to eliminate or deter any retaliatory responses" against the Plaintiff. Compl. at 9. Plaintiff's claims against these Defendants regarding AR 810 were dismissed from the case at the screening stage. <u>See</u> Order, ECF No. 3. However, this does not change the nature of Plaintiff's complaint and the relief he seeks: the ability to worship his religion freely and without retaliation. This is particularly so in light of Plaintiff's separate request for a declaratory judgment stating that inmates have the constitutional right to freely observe their religion, as well as the Court's duty to liberally construe *pro se* pleadings. <u>Bernhardt v. Los Angeles Cnty.</u>, 339 F.3d 920, 925 (9th Cir. 2003); <u>see also</u> <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.") (citation omitted).

The Court therefore construes Plaintiff's request for relief as one that seeks prospective injunctive relief against Defendants in the form of an injunction prohibiting them from restricting Plaintiff's ability to worship his religion freely or retaliating against him for doing so. Thus, Plaintiff's claims for injunctive relief against Defendants in their official capacities survive dismissal. Plaintiff's monetary damages claims asserted against Defendants in their official capacities are dismissed.

**B.  Defendants' Motion to Strike and Motion for Summary Judgment**

Defendants have also moved for summary judgment. Before considering that motion, however, the Court addresses a related matter. Defendants filed a Motion to Strike (ECF No. 46) in response to Plaintiff's Surreply to the Motion for Summary Judgment (ECF No. 45).

Nothing in the Local Rules authorizes surreplies. See LR 7-2(a)–(c). Surreplies are highly disfavored and courts in this district routinely interpret Local Rule 7-2 to allow filing of surreplies only by leave of court and only to address new matters raised in a reply to which a party would otherwise be unable to respond. See, e.g., Lasko v. Am. Bd. of Surgery, 2014 WL 300930 at *1 (D. Nev. Jan. 27, 2014). Defendants do not raise any new matters in their reply to which Plaintiff could not have responded, and the Court declines to allow the surreply. Defendants' motion is granted and Plaintiff's surreply is stricken.

The Court now turns to the Motion for Summary Judgment. Defendants argue that summary judgment should be granted for a number of reasons: (1) Plaintiff failed to exhaust administrative remedies as to Count I; (2) there is no evidence that Defendants Williams and Cox participated in, directed, or knew of and failed to prevent the violation alleged in Count I; (3) Count II is barred by the doctrines of collateral estoppel and/or *res judicata*; (4) Defendants' regulation of Plaintiff's right to exercise his religious beliefs was rationally related to a legitimate penological purpose; (5) Plaintiff has not established a RLUIPA violation as a matter of law; (6) Plaintiff has not established a link between his conduct and the alleged retaliation by Defendants Jones and Willet in Count IV; and (7) Defendant Brown's use of force did not violate the Eighth Amendment. The Court responds to each argument below.

*1.  Exhaustion of Administrative Remedies as to Count I*

First, Defendants contend that Plaintiff did not exhaust all administrative remedies for Count I. The Prison Litigation Reform Act (PLRA) requires that before bringing a Section 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion must be proper, meaning that the plaintiff must proceed through each step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)). The level of detail needed in a grievance to properly

exhaust a claim under the PLRA depends on the applicable grievance procedures of each individual prison. Jones v. Bock, 549 U.S. 199, 218 (2007). In the absence of a prison policy or procedure specifying a particular level of detail at which grievances must be stated, a grievance is sufficient for exhaustion purposes "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id.; see also Jones, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

Where an exhaustion defense is raised in a motion for summary judgment, disputed questions of fact should be resolved by the judge rather than the jury. Albino, 747 F.3d at 1170-71. "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171.

Count I of Plaintiff's complaint alleges that Defendants Cox, Burson, and Williams retaliated against Plaintiff by filing a Notice of Charges ("NOC-R") against him for abuse of the grievance process. Compl. at 12. Plaintiff alleges that the NOC-R was issued after Plaintiff filed a series of grievances claiming that SDCC officials were harassing and discriminating against him because of his religion. Defendants argue that Plaintiff failed to file any grievances contesting the NOC-R he received for abuse of the grievance process or alleging that the NOC-R was issued in retaliation for filing grievances, and that Plaintiff therefore failed to exhaust administrative remedies with respect to the allegedly retaliatory NOC-R. Mot. Dismiss at 11.

The NOC-R that serves as the basis for the claim in Count I was issued on December 16, 2010. See Decl. of Tarz Mitchell, Resp. Mot. Summ. J. Ex. 1 ¶ 2 ("Mitchell Decl."); id., Ex. 2; id., Ex. 5. Although the NOC-R was issued for abuse of the grievance process, neither party has provided the full set of grievances filed by Plaintiff upon which the NOC-R was based. However, Defendant Cox provided a list of the relevant grievance numbers in his written discovery to Plaintiff. See id. Ex. 5 at 1-2. One of the grievances in the list, grievance number

20062904961, has been provided by Defendants. <u>See</u> Mot. Summ. J. Ex. E. This grievance was initially filed at the informal level on September 6, 2010 and claimed that SDCC officials were discriminating against black Jewish inmates by delaying or refusing to give them adequate kosher meals. <u>Id.</u>

On January 10, 2011, Plaintiff received a disciplinary hearing ("NOC Hearing") on the NOC-R he had been issued the month before. Mitchell Decl. ¶ 2. The notes from the NOC Hearing indicate that Plaintiff was charged with "fil[ing] 4 unaccepted grievances from December 1 to December 13, 2010" in violation of AR 740, leading to the issuance of the NOC-R. Resp. Mot. Summ. J. Ex. 2. Although the Court has not been provided with the complete NOC Hearing notes, it appears that the hearing officer dismissed the NOC-R on the grounds that Plaintiff had not violated the regulations governing the grievance procedure, which require *more than* four unfounded grievances within one month. <u>Id.</u>; Mot. Summ. J. Ex. B at 8 (citing AR 740.09, NDOC's regulation governing abuse of the grievance procedure). In his declaration, Plaintiff attests that the hearing officer told him that if he filed "another grievance that addresses any of the previous issues for which the disciplinary hearing [was] held or file[d] a grievance challenging the [NOC-R,] the grievance coordinator [would] reject the grievance which makes a total of 5 unaccepted grievances and [Plaintiff] would be thrown in the 'hole' . . . ." Mitchell Decl. ¶ 3. Plaintiff also states that he was scared after hearing this from the officer and that he followed the officer's orders. <u>Id.</u> ¶ 4.

The Court denies summary judgment with respect to Count I on the ground of exhaustion for two reasons. First, administrative remedies were effectively unavailable to Plaintiff as to Count I. Second, Plaintiff's grievances were in fact sufficient to exhaust Count I.

### i. *Unavailability*

The PLRA's exhaustion requirement applies only to "available" remedies, meaning those that are, as a practical matter, "capable of use" by the inmate. <u>Albino</u>, 747 F.3d at 1171. Under the PLRA, the defendant has the burden to show that there was an available administrative remedy that the plaintiff did not exhaust. <u>Id.</u> at 1172. Once that is done, the plaintiff has the burden of demonstrating that the generally available administrative remedies were, in his

particular case, "effectively unavailable to him." Id. The plaintiff may do so by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). Defendants have the ultimate burden of proof, however. Id.

In this case, Defendants met their initial burden by showing that the NDOC has established procedures for filing grievances and that Plaintiff did not exhaust the grievance process as to his retaliation claim in Count I. See Mot. Summ. J. at 10-11. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff also met his burden of production by showing that administrative remedies were effectively unavailable to him to seek relief from the NOC-R. Plaintiff has provided evidence that at the January 10, 2011 NOC Hearing, the hearing officer verbally threatened Plaintiff that he would be sent to administrative segregation if he resubmitted any of the grievances that led to the NOC-R or submitted new grievances challenging the NOC-R. Mitchell Decl. ¶ 3. Defendants do not dispute this evidence.

The requirement that an inmate exhaust *available* remedies means that exhaustion is not required "when *no* pertinent relief can be obtained through the internal process." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005); Booth v. Churner, 532 U.S. 731, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief for the action complained of . . . ."). No pertinent relief can be obtained—and thus an inmate is not required to exhaust further levels of review—once an inmate is reliably informed by prison staff that an appeals process is not available to him. Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009); see also Williams v. Paramo, 775 F.3d 1182, 1192 (9th Cir. 2015) (reversing a district court's grant of summary judgment on the issue of exhaustion where plaintiff provided "evidence that administrative remedies were not available to her because her filings were rejected by prison officials."). The Court finds that by the hearing officer's threat, as well as by the implied threat of the issuance of the NOC-R itself, Plaintiff was reliably informed that further administrative remedies were not available to him and that there was "no further possibility that corrective action [would be] taken in response to [his] grievance." Brown, 422 F.3d at 935-36. Plaintiff has therefore met his burden with respect to his retaliation claim based on the NOC-R.

The ultimate burden of proof thus rests on Defendants to prove that administrative remedies were in fact available to Plaintiff. Defendants have not satisfied this burden. At oral argument, Defendants referenced a response to one of Plaintiff's grievances that stated that a Notice of Charges would be requested "if this inmate files another grievance *on this matter*." Resp. Mot. Summ. J. Ex. 3 (emphasis added). Defendants also contend that AR 740.09 makes clear that it is only considered an abuse of the grievance process when more than four grievances are filed in a month *on the same issue*. Defendants argue that the grievance response and the regulation put Plaintiff on notice that future charges would only be issued if he filed another grievance on the exact same issue for which he had filed the first four grievances, and thus administrative remedies were in fact available for Plaintiff to exhaust as to his retaliation claim. Both lines of this argument are unfounded.

First, the grievance response to which Defendants point was issued on July 13, 2011. Resp. Mot. Summ. J. Ex. 3. However, Plaintiff's declaration states that the NOC Hearing at which he received the threat took place *six months earlier*, on January 10, 2011. Mitchell Decl. ¶ 2. Second, AR 740.09 does not specify that all grievances must be addressed to the same issue to constitute abuse of the grievance process. Rather, the regulation lists several situations that are considered abuse of the grievance process, including the filing of "[m]ore than four (4) unfounded, frivolous or vexatious grievances per month, if the current grievance is not substantial." Mot. Summ. J. Ex. B at 8. Plaintiff's evidence, consisting of the issuance of the NOC-R itself and the threat communicated to him at the January 10, 2011 NOC Hearing, demonstrates that Plaintiff was under the reasonable impression that the grievance process was no longer available to him to seek administrative remedies regarding the NOC-R. Neither the grievance response cited by Defendants (which is dated six months after the NOC Hearing) nor AR 740.09 alters that finding. The Court therefore finds that Defendants have not met their burden of proof and that Plaintiff has satisfactorily shown that administrative remedies were effectively unavailable to him as to Count I. Summary judgment is denied on the issue of exhaustion.

1              *ii.  Sufficiency of Exhaustion*

2              Even if administrative remedies had been available as to Count I, the Court finds that

3      Plaintiff successfully exhausted those remedies. Where a prison's grievance procedures do not

4      specify the level of factual detail that a grievance must include, the grievance is sufficient as long

5      as it "alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d

6      at 1120. This standard comports with the purposes of the PLRA's exhaustion requirement: to

7      give the prison the opportunity to address complaints internally and take corrective action, to

8      deter frivolous cases, and to develop an administrative record that clarifies the dispute for the

9      court. Brown, 422 F.3d at 936.

10             In this case, the Court can find no provision in NDOC's regulations regarding the

11     grievance procedure that sets out the level of factual specificity required to submit a grievance or

12     that states that each individual instance of retaliation must be grieved separately. See Mot.

13     Summ. J. Ex. B. The NOC-R that serves as the basis for the retaliation claim in Count I was

14     issued after Plaintiff submitted multiple grievances requesting that he receive proper kosher

15     meals and stating that he was being retaliated against. See Resp. Mot. Summ. J. Ex. 2; Mot.

16     Summ. J. Ex. E. Further, it is clear from Plaintiff's grievance history that he submitted multiple

17     grievances, both before and after the issuance of the NOC-R, notifying the prison that he was

18     seeking redress for the fact that he was not receiving kosher meals and that he was being

19     retaliated against for filing grievances. See, e.g., Mot. Summ. J. Ex. E (grievances filed in

20     September and November of 2010 claiming retaliation and discrimination for failing to serve

21     kosher meals to black Jewish prisoners); Mot. Summ. J. Ex. H at 2 (grievance filed June 29,

22     2011 stating that "SDCC staff has continued to harass black Jews because we receive kosher

23     meals for filing civil suits against the Department"); Mot. Summ. J. Ex. M at 10 (grievances filed

24     in August and September of 2011 regarding the type of kosher meals served); id. at 8 (grievance

25     filed on October 11, 2011 stating that NDOC's policy of forcing Jewish inmates to sign a log at

26     mealtimes or receive an NOC "is a retaliatory response for exercising my constitutional right.").

27             In light of this evidence, the Court finds that Plaintiff exhausted his administrative

28     remedies as to Count I because the other grievances he submitted regarding kosher food and

being retaliated against for filing grievances were sufficient to "alert the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120. The Court also finds that requiring Plaintiff to file further grievances regarding his Count I retaliation claim would not serve the purposes of exhaustion. The plethora of grievances filed on the same issue both before and after the NOC-R provided Defendants with ample time and opportunity to take corrective action. These grievances, as well as the NOC-R itself and Plaintiff's unchallenged declaration stating that he was threatened at the NOC Hearing, also demonstrate that Plaintiff's action is not a frivolous one. Finally, the Court finds that Count I contains sufficient factual allegations so as not to require the further development of an administrative record. These reasons provide an alternative means for denying summary judgment as to Count I on exhaustion.

### 2. *Personal Participation of Defendants Williams and Cox as to Count I*

Defendants also argue that summary judgment should be granted as to Defendants Williams and Cox[1] on Count I because Plaintiff has not provided any evidence as to these Defendants' involvement in the alleged retaliation. "Although there is no pure *respondeat superior* liability under section 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violation, or knew of the violations of subordinates and failed to correct them." Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007) (citations and internal quotation marks omitted).

The Court finds that a genuine issue of material fact exists as to whether Defendants Cox and Williams participated in, directed, or knew of and failed to correct the violation alleged in Count I. Plaintiff has provided evidence, which Defendants do not dispute, that Defendant Cox himself wrote or approved the NOC-R which serves as the basis for Plaintiff's retaliation claim in Count I. See Resp. Mot. Summ. J. Ex. 2 (listing G. Cox as the "charging employee"). Plaintiff has also pointed to Defendants' own regulation, AR 740.09, which states in subsection 5 that alleged abuses of the grievance process should be reviewed by the Warden (alleged to be Defendant Williams) and, if the charge is warranted, forwarded to the deputy directors "with a

---

[1] Although Defendants also requested summary judgment as to Defendant Sheryl Foster, Plaintiff did not name Foster in Count I. Defendant Burson is also included in Count I. However, Defendants have not challenged her inclusion in this count.

1  recommendation that a Notice of Charges be issued." <u>See</u> Mot. Summ. J. Ex. B at 9. Taking the

2  evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that

3  Williams recommended the issuance of the NOC-R and that Cox wrote or approved it. Summary

4  judgment is therefore denied on this ground.

5  ### 3.  Collateral Estoppel and Res Judicata

6  Next, Defendants contend that the doctrines of collateral estoppel and *res judicata* require

7  dismissal of Count II as an improper attempt to relitigate claims that were brought, or that could

8  have been brought, in the 2009 Action. Plaintiff agreed that Count II should be dismissed in his

9  response to the Motion to Dismiss. Therefore, Defendants' arguments that Count II should be

10  dismissed under the doctrines of collateral estoppel and *res judicata* are moot.

11  ### 4.  Plaintiff's Free Exercise Claims

12  Defendants argue that summary judgment should be granted on Plaintiff's First

13  Amendment Free Exercise claims as asserted in Counts III and V. In Count III of the complaint,

14  Plaintiff asserts that Defendants Williams, Burson and Dreesen denied Plaintiff his ability to

15  practice his religion and that they discriminated against him by refusing to allow him to leave his

16  cell to observe Passover while allowing one white Jewish inmate to do so. Plaintiff alleges in

17  Count V that Defendants Youngblood, Calderon and Foster[2] denied Plaintiff the ability to

18  practice his faith and racially discriminated against him by refusing to allow him to attend

19  worship service on the Sabbath (Saturday), and that they retaliated against him for filing

20  grievances by canceling Sabbath services for him.

21  The Court finds that summary judgment is not warranted as to the free exercise claims in

22  Counts III and V. First, Plaintiff has established a substantial burden of his sincerely held

23  religious beliefs. Second, Defendants have not established that their actions were reasonably

24  related to legitimate penological interests.

25  / / /

26  / / /

27  

28  [2] Although Defendants Williams and Burson were also named in Count V, Plaintiff agreed to
dismiss them from that count at oral argument after the Court noted that the complaint appeared to allege
redundant claims against them in Counts III and V.

1

*i. Substantial Burden*

To implicate the Free Exercise Clause of the First Amendment, the plaintiff must show that a prison regulation substantially burdened a belief that is sincerely held and religious in nature. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994). To be a "substantial burden," the regulation must do more than simply inconvenience one's exercise of religion. Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011). A substantial burden may be shown where the plaintiff is coerced into acting contrary to his religious beliefs under threat of sanctions or where the prison has conditioned a benefit upon conduct that would violate the plaintiff's religious beliefs. Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1063 (9th Cir. 2008). In other words, a substantial burden exists where the regulation exerts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (quoting Thomas v. Review Bd. of the Indiana Emp't Sec. Div., 450 U.S. 707, 728 (1981)).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds at this stage that Plaintiff has met his initial burden under the Free Exercise Clause as to both counts. First, Defendants do not dispute that Plaintiff's beliefs in the importance of observing Passover, the Sabbath, and the requirement to eat kosher meals are sincerely held and religious in nature.

Second, Plaintiff has sufficiently demonstrated that Defendants' restrictions on his ability to observe these tenets of his faith constituted a substantial burden. Count III alleges that Williams, Burson and Dreesen denied Plaintiff his ability to practice his religion, while Count V states that Defendants Burson, Youngblood, Calderon and Foster did the same by denying Plaintiff's ability to worship on the Sabbath and to observe Passover. Plaintiff's grievance history demonstrates that he was not allowed to observe Passover outside his cell while at least one white Jewish inmate was permitted to do so. Mot. Summ. J. Ex. F. The fact that at least one Jewish prisoner was allowed to participate in and observe Passover constitutes some evidence that Defendants recognized that doing so is an important component of the Jewish faith. Plaintiff's evidence also shows that SDCC officials provided him only "somewhat" kosher

1    meals, often provided these meals very late, and threatened him with NOCs if he failed to appear

2    at mealtimes while not requiring other inmates to do so, which resulted in Plaintiff requesting to

3    be taken off the kosher list to avoid receiving a Notice of Charges. Mitchell Decl. ¶¶ 6-7; Mot.

4    Summ. J. Ex. M at 8-10. Finally, Plaintiff's declaration and grievance history indicate that he

5    was not permitted to attend worship service on the Sabbath and that Plaintiff believes it is

6    "mandated" by his faith that he worship on Saturdays. Mitchell Decl. ¶ 5; Mot. Summ. J. Ex. K.

7    Defendants have not challenged this evidence. Drawing all reasonable inferences in the light

8    most favorable to Plaintiff, the Court finds at this stage that Plaintiff has shown a substantial

9    burden.

10                      *ii.   Whether the Restriction was Reasonable*

11           Ordinarily, once the plaintiff has shown a substantial burden of a sincerely held religious

12   belief, the governmental authority must show that a compelling governmental interest justifies

13   the burden in order not to violate the Free Exercise Clause. Hernandez v. Comm'r of Internal

14   Revenue, 490 U.S. 680, 699 (1989). In this case, however, the Court applies the less restrictive

15   test set forth in Turner v. Safley, 482 U.S. 78 (1987), in light of the deference given by courts to

16   prison officials. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Under Turner, a prison

17   regulation that burdens inmates' First Amendment rights is nonetheless valid "if it is reasonably

18   related to legitimate penological interests." Turner, 482 U.S. at 89. The Turner factors also apply

19   in cases such as this one where the burden arises not from a regulation, but from "[r]estrictions

20   on access to religious opportunities," such as group services and chapel visits. Pierce v. Cnty. of

21   Orange, 526 F.3d 1190, 1209 (9th Cir. 2008).

22           In considering whether a restriction is valid, courts consider four relevant factors as set

23   out in Turner:

24                  (1)  Whether there is "a valid, rational connection between the prison
                         regulation and the legitimate governmental interest put forward to
25                       justify it";

26                  (2)  Whether alternative means of exercising the right remain open to
                         inmates;
27

28

(3) "[T]he impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and

(4) Whether "ready alternatives" to the challenged regulation exist.

Turner, 482 U.S. at 89-90; see also Pierce, 526 F.3d at 1209.

Defendants contend that the Turner factors weigh in their favor. According to Defendants, summary judgment should be granted as to Count III because their refusal to allow Plaintiff to leave his cell to observe Passover did not deny him all means of observing it. He could have, for example, observed it in his cell. Defendants also cite the prison's legitimate interests in safety and in conserving time and labor costs. As to Count V, Defendants argue that summary judgment should be granted because the prison is simply unable to accommodate all requests to worship on each inmate's day of preference, given space and staffing limitations.

The Court finds that, viewing the evidence and drawing reasonable inferences in the light most favorable to Plaintiff, Defendants' argument fails the Turner analysis.

For the first Turner factor, if the plaintiff presents evidence sufficient to refute "a common-sense connection between a legitimate objective and a prison regulation . . . the state must present enough counter-evidence to show that the connection is not so remote as to render the policy arbitrary or irrational." Frost v. Symington, 197 F.3d 348, 357 (9th Cir. 1999) (internal quotation marks omitted). The Court finds that Plaintiff has successfully presented evidence to refute the common-sense connection in this case. As discussed above, Plaintiff's declaration and grievance history show—and Defendants do not dispute—that at least one white Jewish inmate was permitted to leave his cell to observe Passover, that Plaintiff was inhibited from regularly receiving complete kosher meals, and that he was singled out to be issued a NOC if he did not show up for a meal. Plaintiff's evidence also undisputedly shows that Sabbath services were previously provided to him but were taken away. Mitchell Decl. ¶ 5; Mot. Summ. J. Ex. K. The Court can discern no common-sense connection between these acts and a legitimate objective of the prison.

Defendants argue that their actions were taken because of the limited resources and the number of recognized religious groups at SDCC. Defendants have presented no evidence

supporting a rational connection between these institutional concerns and the restrictions they imposed on Plaintiff's religious exercise. Defendants have not submitted affidavits or any other evidence identifying the number of recognized religious groups at SDCC, the constraints SDCC officials face in scheduling times for all religious groups to worship, or how their actions with respect to kosher meals were necessary in light of resource constraints. Defendants' unsupported references to limited resources and the number of recognized religious groups at SDCC are belied by Plaintiff's evidence demonstrating that SDCC officials *did* accommodate observance of Passover in at least one other case, that no other religion or group was singled out to receive NOCs for not showing up to meals, and that Sabbath services had been previously provided to Plaintiff. The Court concludes that Defendants have not met their burden of presenting counter-evidence that would show that their actions were not arbitrary or irrational.

In order to grant summary judgment for Defendants, it is required that they satisfy the first Turner factor. Prison Legal News v. Cook, 238 F.3d 1145, 1151 (9th Cir. 2001). Because the Court has found that Defendants have not established a rational relationship under the first factor, summary judgment is denied on Plaintiff's free exercise claims as alleged in Counts III and V, and the Court need not consider the other Turner factors. Id.

### 5. *Plaintiff's RLUIPA Claims*

Defendants' next proposed ground for summary judgment is that Plaintiff has not established a RLUIPA violation. The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) prohibits governments from imposing substantial burdens on the religious exercise of persons confined in an institution, even if the burden is caused by a rule of general applicability, unless the government can demonstrate that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). To define a "substantial burden" under RLUIPA, courts generally look to the definition of that term under the Supreme Court's free exercise jurisprudence prior to Emp't Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872 (1990). Guru Nanak, 456 F.3d at 988. This jurisprudence has already been reviewed in this Order. See Section IV.B.4, supra. Additionally, in the context of a land use regulation, the Ninth Circuit has held that for a burden

to be substantial under RLUIPA it must "impose a significant great restriction or onus upon such exercise." Church of Foursquare Gospel, 673 F.3d at 1067 (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).

To establish a claim under RLUIPA, the plaintiff bears the initial burden of making a prima facie showing that the challenged policy or regulation constitutes a substantial burden on the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Once that showing has been made, the burden shifts to the defendant to show both that the substantial burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Id. at 995. RLUIPA is to be construed broadly in favor of protecting the exercise of religious beliefs. 42 U.S.C. § 2000cc-3(g). However, it does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005).

For the reasons discussed in Section IV.B.4 above, the Court finds at this stage that Plaintiff has established that Defendants' actions constituted a substantial burden on the exercise of his religious beliefs. The burden thus shifts to Defendants to establish a compelling governmental interest and that their actions were the least restrictive means of furthering that interest.

Defendants argue in their brief that they have a compelling interest in "the institutional need to maintain good order, security, and discipline or to control costs," and in the effective functioning of SDCC more generally. Mot. Summ. J. at 20. Defendants cite to no authority explicitly defining these interests as compelling, although they appropriately point out that courts are to apply the compelling governmental interest standard with "due deference to the experience and expertise of prison and jail administrators." Cutter, 544 U.S. at 723 (quoting S. Rep. No. 103-111, at 10 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1899-00).

The Court finds, however, that it need not determine whether Defendants' interest is compelling because a genuine issue of disputed fact exists as to whether Defendants used the least restrictive means to further that interest. The evidence establishes that at least one inmate was permitted to leave his cell to observe Passover, that Defendants impeded Plaintiff from

receiving completely kosher meals, that Plaintiff and other Hebrew Israelites were the only group to receive NOCs if they did not show up to meals, and that Saturday services were previously provided to Plaintiff before being taken away. Viewing this evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendants could have implemented alternative procedures that would have enabled Plaintiff to exercise his religious beliefs and that would not have jeopardized the effective functioning of the institution. Defendants provide no evidence to support a conclusion—even when considering the deference given them—that the previous schedule that enabled Plaintiff to worship on Saturdays was no longer feasible, that they could not have offered consistent and completely kosher meals to Plaintiff, that their mealtime policy was the least restrictive means of ensuring that Plaintiff received kosher meals, or that they could not have given Plaintiff the same opportunity to observe Passover that they gave at least one other inmate. Accordingly, summary judgment is denied for Plaintiff's RLUIPA claims in Counts III and V.

### 6. Plaintiff's Retaliation Claim in Count IV

Defendants further contend that Plaintiff cannot establish a retaliation claim as to Count IV. In Count IV, Plaintiff alleges that Defendants Jones and Willett, correctional officers at SDCC,[3] issued numerous Notices of Charges against him in retaliation for exercising his right to file grievances. Defendants argue that Plaintiff's retaliation claim fails because the NOC (of which, Defendants assert, there was only one) was issued because Plaintiff violated the Code of Penal Conduct by giving away his kosher meal, a violation he acknowledged committing. Defendants also argue that Plaintiff cannot establish that he was harmed by the NOC because "he did not lose any rights," but rather was treated fairly and appropriately. Mot. Summ. J. at 22.

To establish a First Amendment retaliation claim within the prison context, a plaintiff must establish five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

---

[3] Plaintiff also includes Officer Courtney in this count. However, Courtney has not been served in this action and appears to no longer be employed by NDOC. ECF No. 48.

1   inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a
2   legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).

3          Defendants do not contest that Plaintiff has satisfied these pleading requirements—nor
4   could they. Plaintiff alleges (1) that Jones and Willett filed NOCs against Plaintiff (2) because he
5   (3) exercised his First Amendment right to file grievances and petition for redress, and that Jones
6   and Willett's actions (4) chilled the exercise of Plaintiff's First Amendment rights and (5) did not
7   reasonably advance a legitimate penological purpose. Compl. at 18-19. Instead, they argue that
8   summary judgment should be granted in their favor on the grounds that Plaintiff has not
9   established a genuine dispute of material fact as to the second element (causation), the fourth
10  element (harm or "chilling" effect), or the fifth element (lack of a penological objective).

11         The Court finds that summary judgment is not warranted on Plaintiff's retaliation claim
12  in Count IV because genuine disputes of material fact exist as to each of these elements.

13                              i.  Causation

14         To successfully establish the causation element, "a plaintiff must show that his protected
15  conduct was the substantial or motivating factor behind the defendant's conduct." Brodheim v.
16  Cry, 584 F.3d 126, 1271 (9th Cir. 2009) (internal quotation marks omitted). At the summary
17  judgment stage, this requires evidence of retaliatory motive sufficient to create a genuine dispute
18  of material fact as to the defendant's intent when viewed in the light most favorable to the
19  plaintiff. Id. The timing of the grievances and the allegedly retaliatory action can serve as
20  circumstantial evidence of retaliatory intent. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

21         Here, Plaintiff attests in his declaration that he was targeted by prison officials because he
22  filed grievances and received a kosher diet, leading to the filing of several NOCs against him.
23  Mitchell Decl. ¶ 8. Defendants dispute the number of NOCs that were issued and argue that the
24  NOC was issued because Plaintiff violated NDOC policy, not because he filed grievances. Mot.
25  Summ. J. at 21-22. However, Defendants' claim that only one NOC was issued is contradicted
26  by the evidence in this case. Defendants have provided a copy of a NOC issued by Defendant
27  Jones on June 25, 2011 relating to Plaintiff allegedly eating another inmate's meal. Mot. Summ.
28  J. Ex. J. However, Plaintiff has also provided copies of NOCs issued on July 8, 2011 by

1    Defendant Jones and on August 4, 2011 by Defendant Courtney. Resp. Mot. Summ. J. Ex. 10,

2    11. Both of these NOCs were issued due to Plaintiff's alleged conduct in the culinary unit, and it

3    appears that the July 8, 2011 NOC issued by Defendant Jones may have been dismissed. See

4    Resp. Mot. Summ. J. Ex. 10 ("This issue was resolved on a prior OIC. . . . Lance had this inmate

5    placed on the list. This issue should be resolved by the culinary manager and AW."). In addition,

6    Plaintiff filed grievances contesting the issuance of the July 8, 2011 NOC and was told by one of

7    the grievance respondents to stop filing grievances on the issue or he would receive another

8    NOC for abuse of the grievance process. Resp. Mot. Summ. J. Ex. 3.

9          Further, the timing of Plaintiff's filing of grievances and the related issuance of certain

10   NOCs supports the inference that these NOCs were issued to retaliate against Plaintiff for his

11   efforts to observe the tenets of his religion. Plaintiff filed informal grievances on June 28, 2011

12   and June 29, 2011 claiming that Defendants Jones and Willett racially discriminated against him

13   by filing an NOC against him for "bartering" and that Defendant Jones also did so by taking him

14   off the kosher diet list. Mot. Summ. J. Ex. M at 16-18. An NOC was issued by Defendant Jones a

15   short time later, on July 8, 2011, stating that Plaintiff received an unauthorized kosher tray. Resp.

16   Mot. Summ. J. Ex. 10. On July 13, 2011, Plaintiff submitted two more grievances arguing that

17   the NOC was fabricated and issued with discriminatory intent. Mot. Summ. J. Ex. M at 12-14.

18   On August 4, 2011, Plaintiff filed another grievance stating that the kosher meals he was

19   receiving had not changed in three months and were not prepared or served "by a kosher

20   person." Id. at 10. On the same day, Defendant Courtney issued a NOC against Plaintiff which

21   stated that Plaintiff argued with Courtney over his kosher meal and did not comply with an order

22   to leave the line. Resp. Mot. Summ. J. Ex. 11. The Court finds that this evidence of timing,

23   combined with the inaccuracy of Defendants' claim that only one NOC was issued, creates a

24   genuine dispute of material fact as to whether Defendants acted with retaliatory intent.

25                    *ii. Chilling*

26          The chilling inquiry is an objective one; a plaintiff need not show that the exercise of his

27   First Amendment rights was *actually* chilled, but rather whether the allegedly retaliatory action

28   would chill or silence "a person of ordinary firmness." Brodheim, 584 F.3d at 1271 (quoting

- 27 -

Rhodes, 408 F.3d at 568-69). A reasonable person may have been chilled by the multiple NOCs filed against Plaintiff as well as the threat to file another NOC against him for abuse of the grievance process if he continued to contest the July 8, 2011 NOC. Plaintiff has therefore provided sufficient evidence to establish a genuine dispute of material fact as to chilling.

<i>iii. Legitimate Penological Interest</i>

For a First Amendment retaliation claim, "the plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). However, the defendants cannot rely on a legitimate penological interest if the defendants' proffered justification was used "as a cover or a ruse to silence and punish [the plaintiff] because he filed grievances . . . ." Bruce, 351 F.3d at 1289. In so holding, the Ninth Circuit in Bruce noted that its decision aligned with the holdings of other circuits "that prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." Id.

Here, Defendants claim that the NOC issued against Plaintiff on June 25, 2011 was done in light of the prison's "penological goal in not allowing Plaintiff to barter with other Prisoner [sic] and give away his meals." Mot. Summ. J. at 22. Assuming (without deciding) that prisons have a legitimate penological interest in preventing inmates from bartering and giving away food, the Court finds that summary judgment is not warranted in light of Bruce. The Court has found that a genuine dispute of material fact exists as to whether NOC's were issued against Plaintiff in retaliation for him filing grievances. That finding precludes a grant of summary judgment in favor of Defendants on Plaintiff's retaliation claim as alleged in Count IV based on Defendants' mere articulation of a general justification for their actions.

<b><i>7.  Plaintiff's Excessive Force Claim</i></b>

Finally, Defendants argue that summary judgment should be granted on Count VI, in which Plaintiff alleges that Defendant Brown, a correctional officer at SDCC, used excessive force against him because Plaintiff is African American and Jewish and because he exercised his

First Amendment rights by filing grievances. Compl. at 22. Plaintiff asserts that on February 18, 2012, Defendant Brown, along with several other officers,[4] took Plaintiff out of the culinary unit, slammed him against a wall, and kicked his legs out from under him. Id. Then, the officers forced their knees in his back and held him in an "impossible spread eagle position against the culinary wall" while using racial epithets against him and "encourag[ing] the gun tower to shoot him if he slightly moved from that position." Id. at 22-23. In his declaration, Plaintiff reiterates these facts and, in addition, alleges that these Defendants called him an "impostor Jew" and "nigger Jew" and told Plaintiff that he could not go seek medical attention. Mitchell Decl. ¶¶ 13-16. Plaintiff also alleged that the excessive force caused injury to his back for which he receives regular medical attention. Compl. at 23.

Defendants dispute the level of force used; namely, that Defendant Brown slammed Plaintiff against a wall, kicked his legs from under him, and forced his knees into Plaintiff's back. In his responses to interrogatories, Defendant Brown stated that he did not recall pushing Plaintiff's face into a wall or putting his knee into Plaintiff's back. Defendant Brown also denies Plaintiff's allegation that Brown told the gun tower to shoot Plaintiff if he moved from that position. Defendants also argue that the force used was necessary to keep the peace, as Plaintiff was causing "a near riot situation" by refusing to sign the food log and receive his kosher meal. Mot. Summ. J. at 23.

The Eighth Amendment forbids cruel and unusual punishment. In an excessive force case, prison officials violate the Eighth Amendment if they cause "the unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations and quotation marks omitted); see also Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Courts consider five factors in making this determination: (1) the extent of the injury suffered by the inmate; (2) the need for the use of force; (3) the relationship between the need and the level of force used; (4) the threat

---

[4] Plaintiff also named Officers Guerro and Espinoza in Count VI of his complaint. However, it appears that these officers have not been served.

reasonably perceived by the responsible officials; and (5) any efforts made to mitigate the severity of the force used. <u>Furnace</u>, 705 F.3d at 1028-29 (citation and quotation marks omitted). Applying these factors to this case and viewing the facts and drawing all inferences in the light most favorable to Plaintiff, the Court finds that Defendants' request for summary judgment on Count VI must be denied.

First, the extent of the injury suffered by Plaintiff appears to be significant. Plaintiff's declaration states that during the alleged use of force by Defendant Brown, Plaintiff said that his back "felt as if it were on fire" and that he needed medical attention. Mitchell Decl. ¶ 15. Plaintiff also declares that he receives pain medication and that the doctor informed him that his back may never get better. <u>Id.</u> ¶ 17. Defendants do not dispute this evidence.

Second, the Court finds that it is not clear that the application of force was required according to the facts set forth by Plaintiff. In his declaration, Plaintiff asserts that Defendant Brown used force in response to Plaintiff's refusal to sign the meal log. Mitchell Decl. ¶¶ 12-13. Plaintiff's account is corroborated by the declarations of two other inmates, Richard Nicholson and Shane Brooks. Resp. Mot. Summ. J. Ex. 14, 17. Defendants' written discovery indicates that when an inmate refuses to sign a meal log, officers are supposed to report the refusal and are not permitted to use physical force. Resp. Mot. Summ. J. Ex. 7 at 3; <u>id.</u>, Ex. 8 at 3. Defendants dispute Plaintiff's version of the facts. According to Defendant Brown, Plaintiff "virtually start[ed] a riot in the culinary among the inmates who get kosher/common meals." Mot. Summ. J. Ex. T at 3. Defendant Brown also states that he does not recall pushing Plaintiff's face into the wall or placing his knee in Plaintiff's back, and states that he escorted Plaintiff out of the culinary unit for a patdown. Mot. Summ. J. Ex. T at 2. As the Court has already stated, however, a genuine dispute of material fact clearly exists as to whether any physical force was justified in this situation.

Third, a genuine dispute of material fact exists as to whether the force used was proportional to the need for such force. Viewing the facts in the light most favorable to Plaintiff, the Court is not convinced that the force used by Defendant Brown would be justified for any reason, let alone for Plaintiff refusing to sign a meal log or even creating a disturbance in the

meal line. The Court is also not convinced that Defendant Brown could not have taken other measures to respond to Plaintiff's refusal to sign the meal log.

Fourth, a genuine dispute of material fact exists as to whether Plaintiff's conduct posed a threat to Defendant Brown or the other officers involved. Defendant Williams, the Warden of SDCC, admitted that officers cannot use physical force on inmates because of a refusal to sign a meal log and that a prisoner refusing to do so does not present a threat to the health and safety of the institution. Resp. Mot. Summ. J. Ex. 8 at 3. Defendant Williams also stated that the level of force alleged by Plaintiff in Count VI was not justifiable based on the refusal to eat or sign a meal log. Id. Ex. 13 at 4. Although Defendants claim that Plaintiff nearly caused a "riot situation," Mot. Summ. J. at 23, Plaintiff's version of the facts states otherwise and is corroborated by other declarants.

Fifth, there is no evidence that Defendant Brown or the other officers made any effort to mitigate the level of force used. Plaintiff's declaration states that the officers dragged him out of the culinary unit and used excessive force immediately after he refused twice to sign the meal log. Mitchell Decl. ¶¶ 12-13. Defendants do not provide any evidence that they issued a warning or reported Plaintiff's refusal to sign a meal log. Instead, Defendant Brown states that the only force he recalls using was in escorting Plaintiff out of the culinary unit and placing his legs apart for a patdown. Mot. Summ. J. Ex. T. The Court finds that a genuine dispute of material fact exists as to whether Defendant Brown took any alternative measures to attempt to minimize the amount of force used.

In consideration of the factors set forth in Hudson, summary judgment is denied as to Count VI.

## V.       CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 17) is GRANTED IN PART and DENIED IN PART. Count II in its entirety is dismissed. All of Plaintiff's claims for monetary damages against Defendants in their official capacities are

dismissed. Counts I, III, IV, V, and VI may proceed against Defendants in their individual capacities, and also may proceed against Defendants in their official capacities to the extent that Plaintiff seeks prospective injunctive relief.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Surreply (ECF No. 46) is GRANTED. Plaintiff's Surreply (ECF No. 45) is STRICKEN.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 39) is DENIED. The following claims remain in this case:

- **Count I:** First Amendment retaliation, Fourteenth Amendment equal protection, and conspiracy claims against Greg Cox, Cheryl Burson, and Brian Williams.
- **Count III:** First Amendment free exercise, RLUIPA, and Fourteenth Amendment equal protection claims against Defendants Williams, Burson, and Frank Dreesen.
- **Count IV:** First Amendment free exercise and retaliation, RLUIPA, Fourteenth Amendment equal protection, and conspiracy claims against Jimmy Jones, Dean Willet, and Nathan Courtney.
- **Count V:** First Amendment free exercise and retaliation, RLUIPA, Fourteenth Amendment equal protection, and conspiracy claims against Sheryl Foster, Johnny Youngblood, and Julio Calderon.
- **Count VI:** First Amendment retaliation, Eighth Amendment excessive force, and Fourteenth Amendment equal protection claims against Defendant Brown.

DATED this 2nd day of March, 2015.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**